UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PULTE HOME CORPORATION,**

         **Plaintiff,**

-vs-                                                  Case No. 6:05-cv-95-Orl-31JGG

**KHITAM ELKOWNI, ,**

         **Defendant.**

_____

## ORDER

This case is an appeal from two orders of the Bankruptcy Court in the case *In re Khitam Elkowni*, Bankruptcy Case No. 6:04-bk-00122-ABB. Pulte Home Corporation ("Pulte") appeals the Bankruptcy Court's rulings disallowing Pulte's claim for damages arising from the Debtor, Khitam Elkowni's (the "Debtor") breach of a contract and confirming the Debtor's Third Amended Chapter 13 Plan (the "Plan"). This matter is before the Court on Pulte's initial Brief (Doc. 11), the Debtor's Response (Doc. 22), and Pulte's Reply thereto (Doc. 23).

**I.    Background**

*A. History*

On March 29, 2001, pursuant to an Agreement for Sale and Purchase (the "Purchase Agreement"), Pulte sold to the Debtor for $665,000 a lot (the "Lot") in a community Pulte was developing. (Doc. 1, Att. 3 at 1). The Purchase Agreement provided that the Debtor was obligated to begin construction of a residence on the Lot within twelve months of the date of closing. (Doc. 11 at 2; Doc. 1, Att. 3 at 1). The Purchase Agreement contained a clause providing

that if the Debtor failed to commence construction within that time, Pulte had the option to repurchase the Lot, (Doc. 1, Att. 3 at 1), as follows:

> Seller and Buyer hereby acknowledge that Seller will be damaged in the event construction is not diligently pursued and completed on the Lot within the time periods set forth herein.  Buyer agrees that in the event that such construction shall not have commenced upon the Lot prior to the expiration of the Planning Period provided in Paragraph 21 of this Agreement and thereafter diligently pursued to completion, Seller shall have and is hereby granted the exclusive right and option (but Seller shall not have the obligation) to repurchase the Lot for a sum equal to eighty-five percent (85%) of the Purchase Price, less closing costs on the original sale . . . .  The right and option of Seller to repurchase the Lot pursuant to the provisions of this Paragraph 22 shall be exercised by Seller, if at all, by Seller providing written notice of such exercise to Buyer.

(Doc. 3, Att. 10 at 9).  Pulte and the Debtor also entered into a Memorandum of Agreement and Option to Repurchase (the "Option") with respect to the Lot, (Doc. 1, Att. 3 at 1), which ratified and confirmed the provisions of the Purchase Agreement granting Pulte the option to repurchase the Lot.  (Doc. 3, Att. 10 at 48).

The Debtor failed to begin construction within the time required.  (Doc. 1, Att. 3 at 2).  Thus, on September 26, 2003, Pulte gave the Debtor written notice of Pulte's intent to exercise the Option for a closing to occur on October 23, 2003.[1]  (*Id*.).  The Debtor declined to honor the Option, so on December 3, 2003, Pulte filed a complaint for specific performance of the repurchase option and recorded a lis pendens on the Lot.  (*Id*.).

The Debtor then filed a Chapter 13 petition in bankruptcy.  (*Id*. at 3).  On June 2, 2004, the Bankruptcy Court authorized the sale of the Lot, with Pulte's interest therein transferred to the proceeds of the sale.  (*Id*.).  The Lot sold for $1.12 million.  (*Id*.).  Pulte filed a secured claim for

---

[1] The Bankruptcy Court did not state, and the Debtor has not argued, that Pulte failed to tender payment for the Lot at the time Pulte attempted to exercise the Option.

damages, to which the Debtor filed an objection. (*Id.*; Doc. 2, Att. 8; Doc. 2, Att. 10). The Bankruptcy Court sustained the Debtor's objection to Pulte's claim, (Doc. 1, Att. 3 at 3, 5), and confirmed the Debtor's Plan on December 16, 2004, (Doc. 1, Att. 2; Doc. 3, Att. 7 at 2).

*B. The Bankruptcy Court's Orders*

In an Order dated December 16, 2004, the Bankruptcy Court found that the Option was an executory contract,[2] and found that the Debtor did not file the Chapter 13 petition for the sole purpose of rejecting the Option. (Doc. 1, Att. 3 at 4). The Bankruptcy Court then noted that because the Debtor rejected an executory contract, Pulte was entitled under 11 U.S.C. section 502 to "damages, if any, incurred on or before the rejection." (*Id.* at 5). The Court stated that the "guiding principal of damages is just compensation," the purpose of which "is to put the damaged party in as good of a position as it would have been upon full performance." (*Id.*). However, the Bankruptcy Court concluded that Pulte did not suffer any damages due to the Debtor's breach because "Pulte did not establish actual damages based on the Debtor's failure to build timely,"[3]

---

[2] The Bankruptcy Court repeatedly refers to the Option (as distinguished from the Purchase and Sale Agreement) as an option contract. *See* Doc. 1, Att. 3 at 4 ("Option contracts linking debtors to the role of sellers of real estate are executory."); *id.* ("An option to purchase real estate, given to a prospective purchaser pre-petition, is an executory contract which the debtor may reject pursuant to § 365."). Further, the Bankruptcy Court makes clear that the Debtor rejected the Option. It is thus entirely unclear how the Debtor can reasonably assert that the contract at issue, the Option, is not an executory option contract. Further, Debtor's arguments appear to rest solely on the rejection of the Purchase Agreement, notwithstanding the fact that the Bankruptcy Court's underlying Order and Pulte's appeal therefrom clearly relate to the Option. Finally, the Debtor's Plan clearly rejects the Option (the Memorandum of Agreement and Option to Purchase). Thus the Court rejects the Debtor's arguments to the extent that they are based on the assertion that the instant dispute centers on the Purchase Agreement. The instant dispute centers on the Option, which was clearly intended to effectuate a provision of the Purchase Agreement.

[3] Earlier in its Order, the Bankruptcy Court found that the "purpose of the Option was to protect Pulte from damages to its subdivision." (Doc. 1, Att. 3 at 1-2). The Bankruptcy Court also

and the "significantly appreciated resale price [of the Lot] conflicts with a claim for damages," because an "award of the appreciated equity to Pulte would be an inequitable windfall to the detriment of other creditors." (*Id*.). Thus the Bankruptcy Court sustained the Debtor's objection to, and disallowed, Pulte's claim. (*Id*.). Having rejected Pulte's claim, the Bankruptcy Court then confirmed the Debtor's Plan. (Doc. 1, Att. 2).

The Bankruptcy Court's Orders sustaining the Debtor's objection to Pulte's claim and confirming the Debtor's Plan were both subsequently stayed pending the outcome of Pulte's appeal to this Court. (Doc. 10 at 1).

*C. Arguments*

Pulte asserts that the Debtor breached the Option by rejection, and as a result Pulte has suffered damages. Pulte argues that the proper measure of damages is the loss of the benefit of the bargain of the Option, which in this case is the difference between the contract price and the fair market value of the Lot. Thus, Pulte asserts that the Bankruptcy Court erred in disallowing the claim for damages and in confirming the Debtor's Plan, which did not provide for payment of Pulte's claim. Pulte also argues that this Court should apply *de novo* review, as the issues on appeal involve legal conclusions and the legal significance accorded to certain facts.

The Debtor asserts that the purpose of the option clause in the Purchase Agreement, and the Option itself, was to provide Pulte with a way in which to mitigate damages to the development if a buyer left a lot undeveloped for an extended time. Thus, the Debtor asserts that any damages to which Pulte is entitled must be based on losses Pulte actually suffered as a result

---

found that "Pulte did not suffer a decrease in property values based on [the Debtor's] failure to build within the contractual time period." (*Id*. at 3).

of the Debtor's failure to build. The Debtor claims that the appreciated value of the Lot is not an appropriate remedy for the breach, as it would constitute both an inequitable forfeiture and a windfall for Pulte.

## II.     Legal Analysis

*A. Standard of Review*

In an appeal of a decision of the Bankruptcy Court, this Court sits as an appellate court. When reviewing the Bankruptcy Court's findings of fact, this Court applies the clearly erroneous standard. *In re Williamson*, 15 F.3d 1037, 1038 (11th Cir. 1994); *Capitol Indem. Corp. v. Heidkamp*, 312 B.R. 437, 439 (M.D. Fla. 2003); Fed. R. Bankr. P. 8013. This Court does not make independent factual findings, as that is the function of the Bankruptcy Court. *Williamson*, 15 F.3d at 1038; *In re Goerg*, 930 F.2d 1563, 1566 (11th Cir. 1991). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on review of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lightner v. Lohn*, 274 B.R. 545, 548 (M.D. Fla. 2002); *see also Capitol Indem.*, 312 B.R. at 440 (same). The burden of showing clear error falls on the party seeking to overturn the Bankruptcy Court's findings. *In re Caribbean K Line, Ltd.*, 288 B.R. 908, 911 (S.D. Fla. 2002).

This Court reviews the Bankruptcy Court's conclusions of law under a *de novo* standard. *Williamson*, 15 F.3d at 1038; *Goerg*, 930 F.2d at 1566. Under *de novo* review, this Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001) ("*De novo* review requires the court to make a judgment

independent of the bankruptcy court's, without deference to that court's analysis and conclusions.").

The issues involved in this appeal center on the Bankruptcy Court's determination of Pulte's entitlement to damages and on the confirmation of the Debtor's Plan. As these are questions of law, the Court will apply *de novo* review.

*B. Damages*

There is no dispute regarding the fact that the Debtor refused to convey the Lot to Pulte when Pulte exercised the repurchase option. There is also no dispute that in rejecting the Option, the Debtor breached an executory contract. *In re Waldron*, 36 B.R. 633, 636 (Bankr. S.D. Fla. 1984) ("an option contract to purchase real property is indeed an executory contract"); *In re Gen. Dev. Corp.*, 177 B.R. 1000, 1009 (S.D. Fla. 1995) ("Where the debtor is the seller of real estate, the courts have found the contract to be an executory one."). Finally, it is beyond dispute that the breach of an executory contract entitles the non-breaching party to damages. *In re Sun City Investments, Inc.*, 89 B.R. 245, 248 (Bankr. M.D. Fla. 1988); *Waldron*, 36 B.R. at 642. Thus, the sole issue for determination is the measure of damages to which Pulte is entitled for the Debtor's breach of the Option.

Florida law provides that, in cases involving option contracts, the optionee's rights under the option are "enforceable by all the usual judicial remedies including judgment for damages, injunction and decree for specific performance." *Bigman v. Univ. Fed. Sav. & Loan Ass'n of Coral Gables*, 170 So. 2d 330, 331 (Fla. 3rd DCA 1964); *see also Bottomley v. Huddle*, 234 So. 2d 20, 21 (Fla. 2d DCA 1970) (affirming decree of specific performance of option to purchase land); *Genet v. Fla. E. Coast Ry. Co.*, 150 So. 2d 272, 274-75 (Fla. 3rd DCA 1963) (affirming decree of

specific performance of option to repurchase where owner failed to fulfill construction condition in original sale contract).

Pulte sought, and was entitled to, specific performance of the Option,[4] but the Debtor filed a petition in bankruptcy before that matter could be resolved, and the Lot was then sold as part of the Debtor's bankruptcy proceedings.  The fact that Pulte may no longer seek specific performance, however, does not leave Pulte without a remedy; the Debtor's breach of the Option entitles Pulte to damages.  *Waldron*, 36 B.R. at 642 n.4 (noting that while specific performance may have been available to optionee in state court, in bankruptcy court optionee was entitled to damages under the benefit of the bargain test for breach of option); *Purcell v. Rothman*, 99 So. 2d 631, 632 (Fla. 3rd DCA 1958) ("[W]here specific performance is sought by a purchaser, and for some reason is not granted, the court may proceed to determine that there was a breach of contract on the part of the seller and award damages to the purchaser.").

The measure of damages to which a party is entitled for the breach of an executory contract is a question of state law.  *In re Besade*, 76 B.R. 845, 847 (Bankr. M.D. Fla. 1987).  In Florida, "damages for breach of contract must place the non-breaching party in the same financial position as he would have occupied had the contract been performed." *Waldron*, 36 B.R. at 642.  In order to put Pulte in the same financial position it would have been in had the Option been performed, Pulte is entitled to receive the benefit of its bargain under the Option.  Loss of bargain damages are measured by the difference between the value of the property at the time of the breach and the

---

[4] The Bankruptcy Court recognized Pulte's right to specific performance in state court outside of bankruptcy. (Doc. 3, Att. 16 at 5).

contract price. *Besade*, 76 B.R. at 848; *Wolofsky v. Behrman*, 454 So. 2d 614, 615 (Fla. 4th DCA 1984).[5]

The Bankruptcy Court appeared concerned that the appreciated value of the Lot would result in a windfall to Pulte. (Doc. 1, Att. 3 at 5). However, the Bankruptcy Court correctly pointed out that the purpose of damages "is to put the damaged party in as good of a position as it would have been upon full performance." (*Id.*). Here, full performance would have consisted of Pulte tendering the appropriate contractual purchase price, and the Debtor tendering the Lot in return. The benefit of Pulte's bargain would thus have been the ability to re-sell the Lot for its appreciated value. The possibility that Pulte could realize a profit is inherent in the nature of a contract, and Pulte should not be deprived of its remedy simply because it struck a good bargain.[6]

The contract price for Pulte's repurchase of the Lot was eighty-five percent of the original purchase price of $665,000 less certain closing costs, or $510,856. (Doc. 3, Att. 10 at 12; Doc. 11 at 10). The Lot was sold to a third party for $1.12 million, (Doc. 1, Att. 3 at 3), and there is no dispute that this amount represents the fair market value of the Lot. Thus, the measure of damages is $609,144, and Pulte is entitled to have its claim allowed in that amount. The Bankruptcy

---

[5] The Debtor's argument regarding bad faith is entirely misplaced. The Debtor focuses on the issue of bad faith in filing a Chapter 13 petition. Pulte clearly did not raise such an issue, and instead focused on the Debtor's rejection of the Option. *See* Doc. 11 at 9.

[6] It is proper to award specific performance of an option to purchase land, even where the value of the land significantly exceeds the sales price under the option. *Aerojet-Gen. Corp. v. Askew*, 453 F.2d 819, 833 (5th Cir. 1971); *Charbonier v. Arbona*, 57 So. 887, 888 (Fla. 1912). Where specific performance is unavailable in such circumstances, appropriate compensatory damages should be awarded. *Waldron*, 36 B.R. at 642.

Court's conclusion that Pulte did not suffer actual damages, and thus its decision to disallow Pulte's claim for damages, is reversed.[7]

*C. Confirmation of the Plan*

Section 1325(b) of the Bankruptcy Code (11 U.S.C. 101, *et seq.*) provides, in relevant part:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1). Thus, upon a proper objection, a Chapter 13 plan may not be confirmed unless the plan provides that the debtor will pay all unsecured, nonpriority claims or will apply all of the debtor's disposable income to the plan payments. *In re Florida*, 268 B.R. 875, 879 n.1 (Bankr. M.D. Fla. 2001). Since the Debtor's Plan makes no provision for the payment of Pulte's claim, (Doc. 3, Att. 7 at 2), this matter will be remanded to the Bankruptcy Court for reconsideration of the confirmation of the Debtor's Plan in light of this Court's ruling.

---

[7] The Bankruptcy Court's conclusion that damages in this case arise from the Debtor's failure to build, instead of the Debtor's breach of the Option, is incorrect. At no point has Pulte asserted that its damages result from the Debtor's failure to build, and instead plainly states that "Pulte's damages flow from Debtor's breach of the Option Contract." (Doc. 11 at 4). Indeed, the Bankruptcy Court clearly noted that the Option was an executory contract because, *inter alia*, the Debtor failed to execute a deed to the Lot, and that the rejection of such a contract constitutes a breach thereof. (Doc. 1, Att. 3 at 2-3, 4). Even under a more stringent standard of review, the Bankruptcy Court's conclusion in this regard (that damages related to the Debtor's failure to build) was clearly erroneous. Thus, to the extent that the Debtor relies on the premise that any damages flow from the Debtor's failure to build, those arguments are rejected.

### III. Conclusion

The Bankruptcy Court incorrectly concluded that Pulte was not entitled to damages for the Debtor's breach through rejection of the Option, and thus incorrectly disallowed Pulte's claim for damages. Pulte is entitled to an allowed unsecured claim in the amount of $609,144. Accordingly, it is

**ORDERED THAT** the Bankruptcy Court's Order of December 16, 2004 disallowing Pulte's claim for damages (Doc. 1, Att. 3) is REVERSED. This case is remanded to the Bankruptcy Court for further proceedings consistent with this Order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 2, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party